Anthony J. Viola
Andre K. Cizmarik
Edwards Wildman Palmer LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Plaintiff The National Grange
Of The Order Of Patrons Of Husbandry

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY, <br><br> Plaintiff, <br><br> - against - <br><br> BROOKLYN GRANGE, LLC, <br><br> Defendant. | No. 11 CV _____ <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** <br><br> CV11-5326 <br><br> KUNTZ, J. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

III.  ARGUMENT ........................................................................................ 7

   A.   The Grange is Likely to Succeed on the Merits of its Trademark
        Infringement Claim Under the Lanham Act .......................................... 7

   B.   The Grange is Likely to Succeed on the Merits of its Dilution Claim
        Under the Lanham Act ..................................................................... 12

        1.   The Grange's Marks are Famous ............................................. 12

        2.   Defendant is Making Commercial Use of the Mark ................ 13

        3.   Defendant's Use Began After the Mark Became Famous ....... 13

        4.   Defendant's Use of "Grange" Has Caused and is Continuing to
             Cause Dilution of the Distinctive Quality of the Grange's Famous
             Marks ................................................................................. 13

   C.   The Grange is Likely to Succeed on the Merits Of its Unfair Competition
        Claim Under the Lanham Act ........................................................... 16

   D.   The Grange is Likely to Succeed on the Merits Of Its State Common Law
        Infringement Claim ........................................................................ 17

   E.   The Grange is Likely to Succeed on the Merits of its Dilution Claim
        Under New York State Law General Business Law § 360-I ............... 17

   F.   The Grange is Likely to Succeed on the Merits Of its State Unfair
        Competition Claim ......................................................................... 18

   G.   Defendant's Unlawful Acts Are Causing Irreparable Harm To Plaintiffs ........... 19

   H.   Remedies At Law Are Inadequate To Compensate For Plaintiff's Injury ........... 20

   I.   The Balance Of Hardships Strongly Favors The Grange ..................... 21

   J.   The Public Interest Would Be Served By A Preliminary Injunction ................. 22

IV.   CONCLUSION ................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Arrow Fastener Co., v. Stanley Works, 59 F.3d 384 (2d Cir. 1995) ...........................................10

Boule v. Hutton, 328 F.3d 84 (2d Cir. 2003) .................................................................19

Burberry Ltd. v. Euro Moda, Inc., 2009 U.S. Dist. LEXIS 53250 (S.D.N.Y. 2009).....................19

Caliente Cab Rest. Co. v. Caliente Café Rest. & Bar, Inc.,
    2011 U.S. Dist. LEXIS 83297 (E.D.N.Y. 2011)..........................................................7, 21, 22

Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc.,
    694 F. Supp 1051 (S.D.N.Y. 1998) ..............................................................................9

CJ Prods. LLC v. Snuggly Plushez LLC,
    2011 U.S. Dist. LEXIS 94811 (E.D.N.Y. Aug. 22, 2011).....................................................20

Coca-Cola N. Am. v. Crawley Juice, Inc., 2011 U.S. Dist. LEXIS 52813 (E.D.N.Y. 2011)........18

Consol. Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188 (S.D.N.Y. 1999)................9

Ellington v. Harbrew Imps. Ltd.,
    2011 U.S. Dist. LEXIS 109085 (E.D.N.Y. Aug. 25, 2011)..................................................17

Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E.2d 598 (N.Y. 1999)........................................19

Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.,
    2011 U.S. Dist. LEXIS 106265 (E.D.N.Y. Aug. 18, 2011)..................................................20

GMA Accessories, Inc. v. Eminent, Inc., 2008 WL 2355826 (S.D.N.Y. 2008)............................9

Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,
    523 F.2d 1331 (2d Cir. 1975).....................................................................................9

GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273 (S.D.N.Y. 2002)..................................19

Hasbro, Inc. v. Lanard Toys, Ltd.,
    858 F.2d 70 (2d Cir. 1988).........................................................................................9

ITC Ltd. v. Punchgini, Inc., 482 F.3d 135 (2d Cir. 2007) ...............................................12

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d. Cir. 2006)......................9

Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.,
    182 F.3d 133 (2d Cir. 1999)......................................................................................11

N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)...............................................................15, 19

N.Y. Stock Exch. v. N.Y. Hotel, LLC, 293 F.3d 550,556 (2d Cir. 2002) ......................17

Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts, 937 F.2d 77 (2d Cir. 1991)...........20

Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577 (2d Cir. 1993) .........10

Pfizer, Inc. v. Y2K Shipping & Trading, Inc., 2004 WL 896952 (E.D.N.Y. 2004).........9

Philip Morris USA, Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. 2004) ..............17

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961) .................8, 11, 17

Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.
    2011 U.S. Dist. LEXIS 25755 (E.D.N.Y. 2011)...........................................8, 19, 21

Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010) .............................................................7

Savin Corp. v. Savin Group, 391 F.3d 439 (2d Cir. 2004) ............................................12

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97 (2d Cir. 2009) .....................12, 17

Tiffany Inc. v. eBay, Inc., 600 F.3d 93 (2d Cir. 2010) ........................................7, 13, 14

U.S. Polo Ass'n v. PRL USA Holdings, Inc.,
    2011 U.S. Dist. LEXIS 51707 (S.D.N.Y. May 13, 2011)...........................11, 20, 22

Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc.,
    2011 U.S. Dist. LEXIS 30661 (E.D.N.Y. Feb. 17, 2011).......................................20

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365 (2008)................7

**Statutes**

15 U.S.C. § 1051, Lanham Trademark Act ......................................................... passim

N.Y. Gen. Bus. § 349................................................................................7, 18, 19

N.Y. Gen. Bus. § 360-I .................................................................................7, 17

Plaintiff, the National Grange of the Order of Patrons of Husbandry ("the Grange"), the nation's oldest non-profit agricultural organization, moves for a preliminary injunction under Fed.R.Civ.P. 65, enjoining Defendant Brooklyn Grange LLC, a newly-formed for-profit New York limited liability company, from using the word "GRANGE" in its trade name and trademark.

The preliminary injunction should be granted because Defendant's unauthorized commercial use of the word "GRANGE" in connection with the sale of agricultural goods infringes and dilutes Plaintiff's trademark rights and falsely suggests a connection with Plaintiff, in violation of the federal Lanham Trademark Act, New York General Business Law §§ 349 and 360-I, and New York State common law.

## I.    PRELIMINARY STATEMENT

The Grange is a nonprofit organization founded in 1867 to promote United States agricultural interests.[1]  For nearly 145 years, the Grange and its members have provided a variety of goods and services to families and communities across the country.[2]  Today, the Grange is the nation's oldest national agricultural organization.[3]

Plaintiff the Grange is the owner and senior user of the federally registered, famous marks GRANGE, THE NATIONAL GRANGE, THE GRANGE FOUNDATION and NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY (collectively

---

[1]  Declaration of Andre K. Cizmarik ("Cizmarik Decl."), dated October 28, 2011, annexed to which are: Exhibit A, Declaration of Grange President Edward Luttrell, dated October 28, 2011; Exhibit K, National Grange website, showing Grange history.

[2]  Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶¶ 3-7; Exhibit K, National Grange website, showing Grange history; Exhibit F, Grange U.S. Trademark Registrations, showing dates of first use.

[3]  Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 4; Exhibit K, National Grange website, showing Grange history.

referred to as the GRANGE marks).[4]  Since 1876, the Grange has used the Grange marks in connection with a variety of goods and services related to farming and farm produce.[5]

Defendant, Brooklyn Grange, LLC, a newly formed, for-profit New York limited liability company, has begun using the GRANGE marks in its trade name and in its trademark in connection with growing and offering agricultural goods for sale.[6]  Defendant has no connection with or authorization from Plaintiff the Grange.[7]  Yet Defendant grows vegetables on rooftops of commercial buildings and offers that produce for sale under the trade name Brooklyn Grange LLC and the trademark BROOKLYN GRANGE.[8]

Plaintiff does not object to Defendant's business, just to Defendant's unauthorized commercial use of the word GRANGE in its trade name and trademark.

As the nation's oldest nonprofit agricultural organization, Plaintiff the Grange has over 2,500 local Grange chapters throughout the country.[9]  These local Granges are known by their locality, followed by the name "Grange," such as the Brunswick Grange, the Bethlehem Grange, and the Brooklyn Grange.  Defendant's unauthorized commercial use of BROOKLYN GRANGE in its trade name and trademark, with the same locality/GRANGE pattern, falsely suggests that Defendant is associated with, part of, or authorized by Plaintiff the Grange.

---

[4] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations.

[5] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations, showing dates of first use; Exhibit K, National Grange website, showing history; Exhibit A, Declaration of Grange President Edward Luttrell at ¶¶ 8, 11-12.

[6] Cizmarik Decl., Exhibit B, New York State Department of State records regarding formation of Defendant Brooklyn Grange, LLC; Exhibit I, Brooklyn Grange, LLC website at www.BrooklynGrangeFarm.com.

[7] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 19; Exhibit D, May 18, 2010 letter from Grange President Edward Luttrell to Defendant Brooklyn Grange, LLC.

[8] Cizmarik Decl., Exhibit I, Defendant Brooklyn Grange, LLC website pages.

[9] Cizmarik Decl., Exhibit E, Declaration of Leroy Watson, dated October 28, 2011 at ¶ 25.

2

The Grange has attempted to resolve this dispute outside of court with Defendant, both directly and through Defendant's counsel.[10]  Yet Defendant has proceeded with its plans to use its infringing mark, and has, in fact, expressly evinced its intention to *expand* its business under the GRANGE name and mark, declaring on its website: "Brooklyn Grange is a small business now, but we plan to expand so that we can build more farms on roofs throughout New York and beyond."[11]  Earlier this month, Defendant began sponsoring events under the famous GRANGE marks, including an all-you-can-drink rooftop festival, co-sponsored with a local pub.[12]

To protect the goodwill associated with its famous marks from infringement and dilution, and its ability to control the goodwill and reputation it has worked so hard to build, Plaintiff the Grange is obliged to commence this action and bring this motion for preliminary relief.

## II.    STATEMENT OF FACTS

The Grange's "GRANGE" trademark has been in continuous use in commerce since 1876, and is registered with the US Patent and Trademark Office.  The Grange is also the owner of U.S. trademark registrations for "NATIONAL GRANGE", "THE GRANGE FOUNDATION", "NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY", "PAMOLA GRANGE CENTER", and "THE OLD GRANGE RESTAURANT."[13]

Since at least as early as the 1880's, the Grange has used its GRANGE marks in connection with farmer's markets, fairs, and other venues at which produce is sold.[14]  The GRANGE marks have been used in connection with catering services and banquet and social

---

[10] Cizmarik Decl., Exhibit E, Declaration of Leroy Watson at ¶¶ 6-17.

[11] Cizmarik Decl., Exhibit I, Defendant's www.BrooklynGrangeFarm.com website pages.

[12] Cizmarik Decl., Exhibit G, Defendant Brooklyn Grange, LLC press release, dated September 26, 2011.

[13] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations.

[14] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations; Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 12.

function facilities at which meals are served since at least as early as 1885.[15]  The Grange has also authorized the retail sale of fresh, farm-raised vegetables, preserves, jams, sausages, and condiments under its Grange marks.[16]  And the Grange has licensed restaurants, kitchens, taverns, and cafes in the United States to use its GRANGE marks in connection with food services.[17]

Among its many goods and services, the Grange also provides support for the stewardship of America's natural resources; education, literacy, and development; promotion of safe and properly labeled food products; and organization of cooperatives and other services to support agricultural America.[18]  Furthermore, the Grange is known for its support and promotion of public policies regarding food inspection programs and quality control.[19]

Due to the Grange's many years of extraordinary effort and expense, the Grange marks are famous.  Indeed, in the United States, the proper, capitalized name "the Grange" refers to Plaintiff, the Grange and its local Granges.  This meaning is so commonly accepted that it appears in popular dictionaries.[20]

In the State of New York, for example, where Plaintiff the Grange has had a significant presence since 1873, there are now more than 240 local Grange chapters, such as the Bethlehem Grange, the Brunswick Grange, the Belmont Grange, the Bangor Grange, and the Belfort Grange.[21]  Members of these Granges are farmers, producers and purveyors of food products.

---

[15] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 13; Exhibit F, Grange U.S. Trademark Registrations.
[16] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 8.
[17] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 9.
[18] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 6.
[19] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 7.
[20] Cizmarik Decl., Exhibit C, Dictionary definitions of "Grange."
[21] Cizmarik Decl., Exhibit L, New York State Grange website pages at www.NYSGrange.org.

In the course of its nearly 145 year history, the Grange has had a number of local Grange chapters named "Brooklyn Grange" in various states throughout the country, including Pennsylvania, Illinois, and Kansas.  In the nearby state of Connecticut, the Brooklyn Grange, formed in 1886, continues to serve the public interest actively under the name "Brooklyn Grange."[22]

Defendant's management knew or had reason to know of Plaintiff's federally registered GRANGE marks, and of the nearby local Granges.  Yet it adopted the trade name Brooklyn Grange LLC in March 2010, raises vegetables on rooftop gardens and sells those vegetables for profit to restaurants and to the public, at farm stands, under the trademark BROOKLYN GRANGE.  In so doing, it uses the GRANGE mark in connection with providing agricultural goods and services, which are at the heart of Plaintiff Grange's mission and membership.

The Grange learned about Defendant's use of the infringing BROOKLYN GRANGE mark from a New York Times article dated May 13, 2010.[23]  The president of the Grange promptly wrote to Defendant on May 18, 2010, describing the history of the Grange, its trademark rights, and its activity in New York, and asking Defendant to change its name or otherwise resolve its infringement.[24]  Notably, Plaintiff contacted Defendant before Defendant had raised or offered any crops for sale, so the Defendant had the opportunity to change its name or otherwise resolve its infringement of the GRANGE marks before affixing the BROOKLYN GRANGE mark to any goods.

---

[22] Cizmarik Decl., Exhibit J, Connecticut State Grange website pages at www.CtStateGrange.com; Exhibit E, Declaration of Leroy Watson at ¶ 24.

[23] Cizmarik Decl., Exhibit H, New York Times online article regarding Brooklyn Grange, LLC, dated May 13, 2010; Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 19.

[24] Cizmarik Decl., Exhibit D, May 18, 2010 letter from Grange President Edward Luttrell to Defendant Brooklyn Grange, LLC; Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 19.

In the months that followed that first contact, Defendant led Plaintiff the Grange to believe that the dispute was about to be amicably resolved, then withdrew, then resumed negotiations, inquiring about specific terms of settlement.[25]   Throughout this process, the Grange repeatedly prompted Defendant to come to a final resolution of the dispute, and Defendant apologized for its delays.[26]   On September 7, 2011, the Grange was assured that Defendant, through its counsel, would "get back to" the Grange regarding a resolution.  The Grange has not received a communication from Defendant since then.[27]

Defendant chose to sell produce under its BROOKLYN GRANGE mark, even though it had been timely warned that that would constitute trademark infringement.  Defendant has even begun referring to itself as "the Grange" in communications to the public and in advertising materials promoting its sponsored events.[28]   Earlier this month, Defendant held one such event at its rooftop garden, advertising the event as "Home on the Grange," an "all-you-can-drink" affair.[29]   Plaintiff the Grange promotes responsible alcohol consumption at Grange functions, and, as the owner of the GRANGE marks, has licensed a child care center in Middletown, Connecticut to use the name "Home on the Grange."[30]

Plaintiff believes that Defendant has taken advantage of the Grange's good name, the Grange's marks, and the Grange's good faith efforts to resolve this matter amicably.  Consequently, preliminary injunctive relief is warranted.  The relief Plaintiff seeks is modest:

---

[25] Cizmarik Decl., Exhibit E, Declaration of Leroy Watson at ¶¶ 9-13.
[26] Cizmarik Decl., Exhibit E, Declaration of Leroy Watson at ¶¶ 16-17.
[27] Cizmarik Decl., Exhibit E, Declaration of Leroy Watson at ¶ 17.
[28] Cizmarik Decl., Exhibit I, Defendant Brooklyn Grange, LLC website pages.
[29] Cizmarik Decl., Exhibit G, Defendant Brooklyn Grange, LLC press release, dated September 26, 2011.
[30] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 10.

Plaintiff does not seek to enjoin Defendant's commercial activities, just Defendant's use of the name and mark GRANGE.

As set forth in detail below, the Grange has a strong likelihood of success on the merits with respect to its claims, the Grange is likely to suffer irreparable harm, the balance of hardships weighs decidedly in the Grange's favor, and an injunction is in the public's interest. The Court should promptly enjoin Defendant's misuse of the Grange's marks.

## III.    ARGUMENT

The Grange is entitled to a preliminary injunction if it establishes that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008); Salinger v. Colting, 607 F.3d 68, 77-78 (2d Cir. 2010); Caliente Cab Rest. Co. v. Caliente Café Rest. & Bar, Inc., 2011 U.S. Dist. LEXIS 83297 at *2 (E.D.N.Y. 2011). The Grange's claims include: (1) trademark infringement under the Lanham Act; (2) trademark dilution under the Lanham Act; (3) unfair competition under the Lanham Act; (4) state common law trademark infringement; (5) trademark dilution under New York General Business Law § 360-I; and (6) unfair competition under New York General Business Law § 349. The Grange's likely success on any one of these claims is sufficient to satisfy the first prong of the preliminary injunction standard.

### A.    The Grange is Likely to Succeed on the Merits of its Trademark Infringement Claim Under the Lanham Act

To succeed on a claim of infringement under Section 43(a) of the Lanham Act, the Grange must show (i) that it possesses a valid mark entitled to protection, and (ii) a likelihood of consumer confusion arising from Defendant's use. Tiffany Inc. v. eBay, Inc., 600 F.3d 93, 101 (2d Cir. 2010); 15 U.S.C. § 1114. Since there is no question as to the validity of the Grange's

7

marks, which have been in use for over a century, it is only necessary to address the likelihood of confusion.

The Second Circuit has set out eight non-exclusive factors that guide courts' determinations as to whether a likelihood of confusion exists: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products; (4) evidence that the senior user may "bridge the gap" into the market occupied by the junior user's product; (5) evidence of actual confusion; (6) evidence that the junior mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961); Pretty Girl, Inc. v. Pretty Girl Fashions, Inc. 2011 U.S. Dist. LEXIS 25755, at *267 (E.D.N.Y. 2011), citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996). The Second Circuit has held that whereas "six of the Polaroid factors relate directly to the likelihood of consumer confusion," the remaining two – bad faith and the quality of the products – are more relevant to other issues, "such as harm to plaintiff's reputation and choice of remedy." Id., citing Virgin Enters v. Nawab, 335 F.3d 141, 147 (2d Cir. 2003).

Here, there is a substantial likelihood of confusion. First, as set forth above, the Grange marks have, through long use, acquired substantial distinctiveness and have become famous marks, so much so that the term "Grange" is commonly accepted as referring to the Plaintiff. The *New Oxford American Dictionary (3d ed.)*, *Oxford English Dictionary 2d ed.*, *Webster's Third New International Dictionary of the English Language, Unabridged (1993)*, and *American Heritage Dictionary of the English Language*.[31] Defendant's deliberate use of the BROOKLYN GRANGE mark in connection with raising and selling agricultural goods is likely to confuse and

---

[31] Cizmarik Decl., Exhibit C, Dictionary definitions of "Grange."

8

deceive the public into believing that Defendant and its goods are associated or affiliated with Plaintiff, or are sponsored or endorsed by Plaintiff.

Second, the marks are extremely similar. The dominant, distinctive component of BROOKLYN GRANGE is the word "GRANGE." That is the key, distinctive, source-identifying component of Plaintiff's GRANGE marks.[32] The similarity of the marks "is a key factor in determining likelihood of confusion." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 117 (2d. Cir. 2006). Marks are consistently found "similar" for purposes of trademark infringement where they share substantive terms or sound the same. See, e.g., GMA Accessories, Inc. v. Eminent, Inc., 2008 WL 2355826, at *8 (S.D.N.Y. 2008) (finding the "CHARLOTTE RONSON" mark similar to the "CHARLOTTE" mark); Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc., 694 F. Supp 1051, 1056 (S.D.N.Y. 1998) (finding Cancer Research Institute and Cancer Research Society marks "strikingly similar"). The similarity of marks is determined by their sight, sound, and meaning. See generally Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331 (2d Cir. 1975).[33] Defendant has even adopted the distinctive locality/Grange pattern, just like Bethehem Grange, Bedford Grange or the nearby Brooklyn Grange in Connecticut.

Third, there is close proximity between the Grange and Defendant's commercial activities. Plaintiff uses its GRANGE marks in connection with food sales at farm stands; so does Defendant. Plaintiff licenses restaurants to use its GRANGE marks; Defendant sells its

---

[32] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations.

[33] See also Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 77 (2d Cir. 1988); Pfizer, Inc. v. Y2K Shipping & Trading, Inc., 2004 WL 896952, at *4 (E.D.N.Y. 2004) (finding that the VIAGRA and TRIAGRA marks were "quite similar"); Consol. Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 198 (S.D.N.Y. 1999) (finding the defendants' trade names "Montecristi" and "Monte Cristi" were "almost identical, both phonetically and visually" to the plaintiff's trademark "Montecristo" and "Monte Cristo").

BROOKLYN GRANGE produce to restaurants. Both Plaintiff the Grange and Defendant Brooklyn Grange LLC promote the sale of fresh produce at farmer's markets and restaurants, and both promote safe and sustainable agriculture. Defendant's business is the very sort of activity the Grange promotes: raising and selling agricultural products.

Fourth, since the Grange has been offering produce and agricultural goods and services under the Grange marks for over one hundred and forty years, the gap has already been bridged, and thus this factor weighs heavily in the Grange's favor.

The Brooklyn Grange LLC was formed very recently, in March 2010[34] and only began selling produce in the past year, so evidence of actual confusion is difficult to obtain at this early stage. But the standard is likelihood of confusion, which may be inferred from other factors, such as the overlapping marks and goods and services. See Arrow Fastener Co., v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1995) ("absence of actual confusion alone is not dispositive of question of likelihood of confusion").

Sixth, the defendant's actual or constructive knowledge of the prior user's mark may indicate bad faith. Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577, 587 (2d Cir. 1993). Here, Plaintiff has used its marks for over one hundred years, and owns incontestable federal trademark registrations.[35] Moreover, Plaintiff placed the Defendant on actual notice of the Grange's trademark rights before Defendant affixed any mark to its goods or offered its services to the public.[36] Yet Defendant, knowing of Plaintiff's rights in the GRANGE marks,

---

[34] Cizmarik Decl., Exhibit B, New York State Department of State records regarding formation of Defendant Brooklyn Grange, LLC.
[35] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations.
[36] Cizmarik Decl., Exhibit D, May 18, 2010 letter from Grange President Edward Luttrell to Defendant Brooklyn Grange, LLC.

intentionally adopted and used the BROOKLYN GRANGE trademark for agricultural goods and services, and has even announced plans for expansion.[37]

If the Defendant's products and services are comparable in quality to those the public has come to expect from the Grange, the likelihood of confusion is enhanced. Morningside Group, Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 142 (2d Cir. 1999) (finding that comparable quality of plaintiff's and defendant's services enhanced likelihood of confusion). "At the same time, courts in this Circuit have found that similarity in the quality of the products may create an even greater likelihood of confusion as to source inasmuch as consumers may expect products of similar quality to emanate from the same source." U.S. Polo Ass'n v. PRL USA Holdings, Inc., 2011 U.S. Dist. LEXIS 51707, at *51-52 (S.D.N.Y. May 13, 2011).

Finally, the Defendant sells vegetables under the BROOKLYN GRANGE mark at farm stands, where consumers from all walks of life, both sophisticated and unsophisticated, shop for fresh produce. Since Plaintiff the Grange has no control over the quality of Defendant's goods, any variation or deficiencies in its produce will be attributed to the Grange, harming the good will it has built up over the last century. Thus, this factor also weighs in the Grange's favor.

In sum, the *Polaroid* factors strongly indicate likely confusion stemming from the Defendant's use of the Plaintiff's Grange marks in connection with the sale of fresh produce and promotion of agricultural activity. Accordingly, plaintiffs have a high likelihood of prevailing on their Lanham Act infringement claim.

---

[37] Cizmarik Decl., Exhibit I, Defendant's www.BrooklynGrangeFarm.com website pages ("Brooklyn Grange is a small business now, but we plan to expand so that we can build more farms on roofs throughout New York and beyond.")

11

**B.     The Grange is Likely to Succeed on the Merits of its Dilution Claim Under the Lanham Act**

"The term dilution means the lessening of the capacity of a famous mark to identify and distinguish goods or services," regardless of the presence of "competition between the owner of the famous mark and other parties," or "likelihood of confusion, mistake or deception." 15 U.S.C. § 1127.  Under federal law, an owner of a famous, distinctive mark is entitled to an injunction against the user of a mark that is 'likely to cause dilution' of the famous mark, even in the absence of competition or confusion.  Savin Corp. v. Savin Group, 391 F.3d 439, 449 (2d Cir. 2004); Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 105 (2d Cir. 2009). As specified by statute, federal dilution is actionable in two situations: (1) dilution by "blurring" and (2) dilution by "tarnishment."  15 U.S.C. § 1125(c).

**1.     The Grange's Marks are Famous**

Under 15 U.S.C. § 1125(c), four non-exclusive factors are relevant to determining whether a mark is sufficiently famous for anti-dilution protection:  (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.  ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 168 (2d Cir. 2007).

The Grange has used its GRANGE marks in commerce in the United States since the late 1800's, when the Grange established itself as a force promoting farms and farming.[38]  The Grange's reach extends throughout the country, with local Granges from Maine to Washington

---

[38] Cizmarik Decl., Exhibit K, National Grange website pages from www.NationalGrange.org; Exhibit A, Declaration of Edward Luttrell at ¶¶ 3, 6, 8-15.

State.[39] After nearly 145 years of activity, the Grange has even become recognized in dictionaries.[40] The GRANGE marks are incontestable, and reflect dates of first use reaching back over a century.[41]

### 2. Defendant is Making Commercial Use of the Mark

It is beyond dispute that the Defendant is making unauthorized commercial use of the GRANGE mark by advertising and selling goods and offering services under the mark.

### 3. Defendant's Use Began After the Mark Became Famous

By the time Brooklyn Grange LLC had been established, the National Grange had been providing goods and services under the Grange marks for over 140 years.[42] Even before 1900, the Grange was recognized as a force for American farmers.[43]

### 4. Defendant's Use of "Grange" Has Caused and is Continuing to Cause Dilution of the Distinctive Quality of the Grange's Famous Marks

The Grange may prevail on its dilution claim by showing either that the Defendant's use will likely blur the distinctiveness of the Grange's marks or that Defendant's use will likely tarnish the Grange's marks. Although only one is required for relief, both forms of dilution are present here.

### a. Defendant's Use of the Grange's Famous Marks Is likely to Cause Dilution by Blurring

Dilution by blurring refers to "the whittling away of established trademark's selling power and value through its unauthorized use by others." Tiffany Inc. v. eBay, Inc., 600 F.3d

---

[39] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 5.
[40] Cizmarik Decl., Exhibit C, Dictionary definitions of "Grange."
[41] Cizmarik Decl., Exhibit F, Grange U.S. Trademark Registrations.
[42] Cizmarik Decl., Exhibit B, New York State Department of State records regarding formation of Defendant Brooklyn Grange, LLC; Exhibit F, Grange U.S. Trademark Registrations showing dates of first use; Exhibit A, Declaration of Grange President Edward Luttrell at ¶¶ 3, 6, 8-15.
[43] Cizmarik Decl., Exhibit K, National Grange website pages from www.NationalGrange.org; Exhibit F, Grange U.S. Trademark Registrations showing dates of first use; Exhibit A, Declaration of Grange President Edward Luttrell at ¶¶ 3-5, 12 and 15.

93, 111 (2d Cir. 2010). Blurring is not a question of confusion. Id. Federal law identifies a non-exhaustive list of six factors that courts "may consider" when determining whether a mark is likely to cause dilution by blurring: (1) similarity of the marks; (2) distinctiveness of the famous mark; (3) substantially exclusive use; (4) degree of recognition; (5) intent to create association; and (6) actual association between the marks. 15 U.S.C. § 1125(c)(2)(B)(i-vi).

Here, the marks are substantially similar. As discussed above, Defendant's mark is extremely similar to the GRANGE marks. The word BROOKLYN, standing alone, does not identify a source of goods or services. The word GRANGE is the dominant component of Defendant's trademark, and it is identical to Plaintiff's GRANGE mark. Plaintiff's GRANGE marks have acquired distinctiveness over nearly 145 years of use. That use has been substantially exclusive to the Grange, with minor exceptions for goods or services having nothing to do with agriculture.[44] The Grange's marks enjoy widespread recognition, not only among its members, but non-members as well — witness its inclusion in dictionary definitions.[45] Defendant Brooklyn Grange intends to create an association with the Grange and its marks. Defendant was placed on notice of the GRANGE trademarks by virtue of their long-standing federal registrations. And Defendant was placed on actual notice of the Grange's trademark rights before Defendant had raised any crops, much less placed a trademark upon them.[46] Defendant opted to adopt the moniker "Brooklyn Grange," even after being informed of the Grange's existing rights. The Grange is so strongly associated with the word "grange" in respect to agriculture, that the Defendant cannot credibly contend accident or mistake in naming its agricultural project "Brooklyn Grange." This factor weighs heavily in the Grange's favor.

---

[44] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶¶ 9-11, 13, 15.
[45] Cizmarik Decl., Exhibit C, Dictionary definitions of "Grange."
[46] Cizmarik Decl., Exhibit D, May 18, 2010 letter from Grange President Edward Luttrell to Defendant Brooklyn Grange, LLC.

14

Thus, Defendant's intentional adoption and use of the BROOKLYN GRANGE mark will diminish the quality of Plaintiff's GRANGE marks by diminishing their capacity to identify and distinguish the Grange's goods and services.  That is dilution by blurring.

### b.     Defendant's Use of the Grange's Famous Marks Is Likely to Cause Dilution by Tarnishment

In contrast to dilution by blurring, "dilution by tarnishment" is an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.  15 U.S.C. § 1125(c)(2)(C).  Courts in this circuit have noted that the "sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative association through defendant's use." N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 323 (S.D.N.Y. 2010), quoting Burberry Ltd. v. Euro Moda, Inc., 2009 U.S. Dist. LEXIS 53250 (S.D.N.Y. 2009).

The Defendant has recently hosted an "all-you-can-drink" celebration, which it held on its rooftop garden and called "Home On the Grange."[47]  The binge drinking implied by such an event is antithetical to the National Grange's philosophy.  The Grange has expended substantial time and effort in creating and maintaining a wholesome, values-oriented institution.  It has, historically, supported alcohol consumption regulations.  The Grange currently regulates the service of alcohol at local Grange meetings through its constitution and by-laws.[48]  The Grange has, moreover, licensed a child care center in Middletown, Connecticut to use the name "Home on the Grange."[49]

The Grange is a wholesome, family oriented institution, and it has spent over a century cultivating that image.  There is no question that it will suffer a negative association through

---

[47] Cizmarik Decl., Exhibit G, Defendant Brooklyn Grange, LLC press release, dated September 26, 2011.
[48] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 7.
[49] Cizmarik Decl., Exhibit A, Declaration of Grange President Edward Luttrell at ¶ 10.

Defendant's misuse of the Grange's marks.  That is dilution by tarnishment, and a valid basis for enjoining Defendant's use of the GRANGE mark.

**C.   The Grange is Likely to Succeed on the Merits
Of its Unfair Competition Claim Under the Lanham Act**

Section 43(a) of the Lanham Act prohibits "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association* of such person with another person, or as to the *origin, sponsorship, or approval of his or her goods, services*."  15 U.S.C. § 1125(a)(1)(A)(emphasis added).

Defendant's use of the mark BROOKLYN GRANGE connotes a false association with the Grange and its local chapters.  The Grange currently has over 240 local and junior chapters in the state of New York, some in communities just outside of New York City.[50]  There have been multiple local Grange chapters in the United States that have used the name "Brooklyn Grange."[51]  This includes the active Brooklyn Grange nearby in the State of Connecticut.[52]  Defendant's BROOKLYN GRANGE mark conveys the impression that it is a local Grange under the charter of the Plaintiff.  It falsely suggests that Defendant is affiliated, connected, associated, part of, sponsored, or approved by Plaintiff the Grange.  Thus, the Grange is likely to succeed on its unfair competition claim under the Lanham Act.

---

[50] Cizmarik Decl., Exhibit A, Declaration of Grange president Edward Luttrell at ¶ 18.
[51] Cizmarik Decl., Exhibit A, Declaration of Grange president Edward Luttrell at ¶ 16.
[52] Cizmarik Decl., Exhibit A, Declaration of Grange president Edward Luttrell at ¶ 17; Exhibit E, Declaration of Leroy Watson at ¶ 24; Exhibit J, Connecticut State Grange website showing local Brooklyn Grange.

16

**D.     The Grange is Likely to Succeed on the Merits
           Of Its State Common Law Infringement Claim**

The claim of common law trademark infringement mirrors that of the Lanham Act.

Philip Morris USA, Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154 at *21 (S.D.N.Y. 2004)

citing Standard & Poor's Corp., Inc. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir.

1982).  Therefore, the same legal analysis applies to this cause of action, and warrants an

injunction.

**E.     The Grange is Likely to Succeed on the Merits of its Dilution
           Claim Under New York State Law General Business Law § 360-I**

To show dilution under State law, the Grange must show (i) that it owns a distinctive

mark, and (ii) that there is a likelihood of dilution.  N.Y. Gen Bus § 36I; Ellington v. Harbrew

Imps. Ltd., 2011 U.S. Dist. LEXIS 109085, at *12-13 (E.D.N.Y. Aug. 25, 2011).  Unlike federal

trademark dilution law, New York's trademark dilution law does not require that a mark be

"famous"; a distinctive mark will suffice.  Starbucks, 588 F.3d at 114 (comparing 15 U.S.C.

§ 1125(c), with N.Y. Gen. Bus. Law § 360-I).  A distinctive mark is protected against dilution by

blurring and by tarnishment.  Starbucks, 588 F.3d at 114.

To determine dilution by blurring, courts in this circuit look to six factors (a modified

*Polaroid* test): (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the

sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the

senior mark; and (vi) the renown of the junior mark.  N.Y. Stock Exch. v. N.Y. Hotel, LLC, 293

F.3d 550,556 (2d Cir. 2002), and Starbucks, 588 F.3d at 114 with Polaroid Corp. v. Polarad

Elecs. Corp., 287 F.2d 492 (2d Cir. 1961).

Here, Defendant's BROOKLYN GRANGE mark is substantially similar to the

GRANGE marks.  Starbucks, 588 F.3d at 114.  It uses the exact same locality/Grange pattern

that the Grange uses throughout the country for its local Granges.  And it is identical to the

17

nearby local Brooklyn Grange, in Connecticut.  Defendant offers agricultural products for sale — a category that is at the core of the Grange and its membership.  Consumers buying Defendant's produce at farm stands cannot be expected to know that Defendant is not associated with Plaintiff the Grange.  Defendant adopted its mark in the face of Plaintiff's incontestable federal registrations, and in the face of express warnings not to adopt the GRANGE mark.  The GRANGE marks reflect over a century of use nationwide, and have become a part of the American lexicon.[53]  Defendant, in contrast, has just recently been formed, and has not developed the slightest "renown" independent of Plaintiff the Grange.

Further, the Grange's reputation and the distinctive quality of its marks are being tarnished by an association with Brooklyn Grange, which, as discussed *supra*, has used Plaintiff's "Home on the Grange" name, a name licensed to a Middletown, Connecticut child care center, to sponsor an "all-you-can-drink" binge on its rooftop.[54]  This is precisely the sort of harm that the State antidilution statute was designed to curtail.

### F.      The Grange is Likely to Succeed on the Merits Of its State Unfair Competition Claim

Under New York General Business Law § 349, the Grange must show: (1) Defendant engaged in a consumer-oriented act; (2) that the consumer-oriented act was misleading in a material way; and (3) that the Grange consequently suffered injury.  N.Y. Gen. Bus. § 349; Coca-Cola N. Am. v. Crawley Juice, Inc., 2011 U.S. Dist. LEXIS 52813, at *15 (E.D.N.Y. 2011).  To be "consumer-oriented," a deceptive act or practice need only have "a broader impact on consumers at large."  Id.  A "materially misleading consumer-oriented act" has been defined as a representation or omission "likely to mislead a reasonable consumer acting reasonably under

---

[53] Cizmarik Decl., Exhibit C, Dictionary Definitions of "Grange."
[54] Cizmarik Decl., Exhibit G, Defendant Brooklyn Grange, LLC press release, dated September 26, 2011.

18

the circumstances." Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E.2d 598, 604 (N.Y. 1999).

Such acts need not reach the level of common-law fraud to be actionable under section 349.

Burberry Ltd. v. Euro Moda, Inc., 2009 U.S. Dist. LEXIS 53250, at *45 (S.D.N.Y. 2009)

(quoting Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (N.Y. 2000)).  Misleading the "public at

large" suffices under this statute.  Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003).

 Here, without the Grange's authorization or consent, and with knowledge of the Grange's

well-known and prior rights in the GRANGE marks, the Defendant has advertised, distributed,

offered for sale and/or sold produce to the consuming public under the confusingly similar

BROOKLYN GRANGE trademark and the trade name BROOKLYN GRANGE LLC.  These

representations to consumers are likely to deceive and mislead a reasonable consumer, acting

reasonably under the circumstances, into believing that Defendant and its goods and services are

sponsored, approved, licensed, endorsed, or affiliated with the Grange.  The confusion caused by

these deceptive acts and practices is sufficient injury under a § 349 claim.  Burberry, 2009 U.S.

Dist. LEXIS 53250, at *46 (injury to the public satisfied by defendant's deliberate sale of

infringing products); GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 302 (S.D.N.Y.

2002) (by intentionally using plaintiff's mark in a manner confusingly similar to plaintiff's use of

the mark, causing actual confusion, defendant engaged in a consumer-oriented act that was

misleading in a material way).

 **G.** **Defendant's Unlawful Acts Are Causing Irreparable Harm To Plaintiffs**

 Irreparable harm is shown in a trademark case when the party seeking the injunction

shows that it will lose control over the reputation of its trademark.  Loss of control over one's

reputation is neither calculable nor precisely compensable.  Pretty Girl, Inc., 2011 U.S. Dist.

LEXIS 25755 (E.D.N.Y. 2011); N.Y. City Triathlon, 704 F. Supp. 2d at 343 (S.D.N.Y. 2010)

quoting Power Test Petroleum Distribs., Inc., v. Calcu Gas. Inc., 754 F.2d 91, 95 (2d Cir. 1985).

Here, given the likelihood of confusion between the marks, the prospect of dilution by blurring and tarnishment, and the unfair suggestion that Defendant and its goods are associated with and approved by Plaintiff the Grange, the reputation and goodwill cultivated by the Grange for over a century would be taken out of its hands. CJ Prods. LLC v. Snuggly Plushez LLC, 2011 U.S. Dist. LEXIS 94811 at *19-20 (E.D.N.Y. Aug. 22, 2011); see U.S. Polo Ass'n v. PRL USA Holdings, Inc., 2011 U.S. Dist. LEXIS 51707, at *51-52 (S.D.N.Y. May 13, 2011). The Grange's good name, which has heretofore been used for beneficent non-profit ends, to support farms and farming in communities throughout the country, has been appropriated and used by a for-profit commercial business that has no regard for the history of the Grange's name and marks. This furnishes the Court with more than a sufficient basis from which to reasonably infer irreparable harm. See Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc., 2011 U.S. Dist. LEXIS 106265, at *10 (E.D.N.Y. Aug. 18, 2011).

**H.      Remedies At Law Are Inadequate To Compensate For Plaintiff's Injury**

An award of damages would not recompense this misappropriation of the Grange's marks, as it could not return control over the GRANGE marks to the Grange. Absent an injunction, Defendant, a for-profit business, will continue to trade on the nonprofit Grange's marks, and the Grange would have no control over that use.

The showing of irreparable harm above is sufficient to establish the inadequacy of monetary compensation. Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc., 2011 U.S. Dist. LEXIS 30661, at *17 (E.D.N.Y. Feb. 17, 2011) ("Plaintiffs' showing of irreparable harm indicates that there is no measure at law that can fully compensate Plaintiffs for their injury."); See generally Nw. Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts, 937 F.2d 77, 80 (2d Cir. 1991) ("The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of

adequate remedy at law necessary to establish the equitable rights.") Thus, remedies at law cannot adequately compensate Plaintiff for its injuries.

## I.     The Balance Of Hardships Strongly Favors The Grange

Defendant has been in operation for a little over one year.[55] As early as May 2010, when Defendant had not even planted or cultivated any crops, the Grange warned it not to infringe the GRANGE marks.[56] Ignoring this warning, Defendant chose to adopt and use the BROOKLYN GRANGE trademark in connection with the sale of produce.

Plaintiff the Grange does not seek to enjoin Defendant's conduct of its business; Defendant can continue to grow and sell crops, so long as it does not use the word GRANGE in connection with its business. This modest request for a name change is easily effected for a newly formed business such as Defendant's. Pretty Girl, Inc., 788 F. Supp. 2d at 270 ("... requiring Defendants to choose an alternate name for their newly formed business is less onerous than attempting to compensate Plaintiff for Defendant's use of its trademarked name."); Caliente Cab, 2011 U.S. Dist. LEXIS 83297, at *6 (balance of hardships clearly favored Plaintiff, where Plaintiff had built up and maintained its reputation for more than 25 years, whereas Defendants' business had not opened and had been on notice of Plaintiff's trademark claim for a little over one year.) Thus, Defendant can be enjoined to change its trade name and trademark with little hardship.

The Grange, on the other hand, has invested nearly 145 years developing the goodwill associated with its GRANGE marks. It would be inequitable and a hardship for the Grange to allow a business with such shallow roots as Defendant to continue trading on the Grange's marks

---

[55] Cizmarik Decl., Exhibit B, New York State Department of State records regarding formation of Defendant Brooklyn Grange, LLC.
[56] Cizmarik Decl., Exhibit D, May 18, 2010 letter from Grange President Edward Luttrell to Defendant Brooklyn Grange, LLC.

— to turn the Grange's nonprofit name and marks to its own for-profit commercial advantage. On balance, an injunction will maintain and protect the Grange's control over its GRANGE marks, while allowing Defendant to carry on its business. The balance of hardships therefore favors Plaintiff the Grange.

### J.   The Public Interest Would Be Served By A Preliminary Injunction

Injunctive relief promotes the public interest in protection of trademarks. Trademarks further the public interest in avoiding consumer confusion over the source of products and services, and allow trademark owners to control the quality of goods and services offered to the public under those trademarks. See <u>Caliente Cab</u>, 2011 U.S. Dist. LEXIS 83297, at *6 ("... because of the likelihood of consumer confusion, the public interest is served in this case by the issuance of an injunction."); <u>U.S. Polo Ass'n v. PRL USA Holdings, Inc.</u>, 2011 U.S. Dist. LEXIS 51707, at *63 (S.D.N.Y. May 13, 2011) ("The consuming public has a protectable interest in being free from confusion, deception and mistake.").

Here, Defendant's adoption and use of the trade name Brooklyn Grange LLC and the trademark BROOKLYN GRANGE for agricultural products and services falsely represents to the public that here is a relationship between it and the Grange when, in reality, none exists. The public interest militates against allowing Brooklyn Grange to mislead and confuse the public in this way.

## IV.   CONCLUSION

The Court should preliminarily enjoin Brooklyn Grange LLC, as well as any related entity or person acting in concert with it, from using any trademark or trade name containing the word "Grange" or any confusingly similar word.

Dated:   November 1, 2011
         New York, New York

Respectfully submitted,

Anthony J. Viola
Andre K. Cizmarik
Edwards Wildman Palmer LLP
750 Lexington AvenueNew York, NY 10022
Tel.: (212) 308-4411
Fax: (212) 308-4844
aviola@edwardswildman.com
acizmarik@edwardswildman.com
Attorneys for Plaintiff The National Grange
Of The Order Of Patrons Of Husbandry

Of counsel:
James L. Bikoff (not yet admitted *pro hac vice*)
David K. Heasley (not yet admitted *pro hac vice*)
Silverberg, Goldman & Bikoff, LLP
Georgetown Place, Suite 120
1101 30th Street, N.W.
Washington, D.C. 20007
Tel.: (202) 944-3300
Fax: (202) 944-3306
jbikoff@sgbdc.com
dheasley@sgbdc.com

NYC 405874.2

23